UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DAVID TUUPOINA,<br><br>　　　　Plaintiff,<br><br>　v.<br><br>ANDREW SAUL, Commissioner of Social Security,<br><br>　　　　Defendant. | No. 1:18-cv-01320-GSA<br><br>**ORDER DIRECTING ENTRY OF JUDGMENT IN FAVOR OF COMMISSIONER OF SOCIAL SECURITY AND AGAINST PLAINTIFF** |

**I.　　Introduction**

Plaintiff David Tuupoina ("Plaintiff") seeks judicial review of the final decision of the Commissioner of Social Security ("Commissioner" or "Defendant") denying his application for disability insurance benefits pursuant to Title II and supplemental security income pursuant to Title XVI of the Social Security Act. The matter is currently before the Court on the parties' briefs which were submitted without oral argument to the Honorable Gary S. Austin, United States Magistrate Judge.[1] *See* Docs. 19 and 26. Having reviewed the record as a whole, the Court finds that the ALJ's decision is supported by substantial evidence and applicable law. Accordingly, Plaintiff's appeal is denied.

---

[1] The parties consented to the jurisdiction of the United States Magistrate Judge. *See* Docs. 8 and 10.

1

**II.     Procedural Background**

On December 22, 2009, Plaintiff filed applications for disability insurance benefits and supplemental security income alleging disability beginning October 1, 2009.  AR 126.  Following initial review, reconsideration and an agency hearing, the Commissioner denied the applications on October 11, 2012.  AR 126.  The Appeals Council denied review on November 21, 2013.  AR 126.

On January 27, 2014, Plaintiff again filed applications for disability insurance benefits[2] and supplemental security income alleging disability beginning October 1, 2009.  AR 33.  The Commissioner denied the application initially on July 15, 2014, and following reconsideration on November 19, 2014.  AR 33.

On December 22, 2014, Plaintiff filed a request for a hearing.  AR 33.  Administrative Law Judge Nancy Stewart presided over an administrative hearing on September 26, 2016.  AR 86-105.  Plaintiff appeared and was represented by an attorney.  AR 86.  On December 8, 2016, the ALJ denied Plaintiff's application.  AR 33-40.

The Appeals Council denied review on February 13, 2018.  AR 7-13.  On September 25, 2018, 2018, Plaintiff filed a complaint in this Court.  Doc. 1.

**III.    Factual Background**

   **A.     Plaintiff's Testimony**

Plaintiff (born May 18, 1964) completed the twelfth grade.  AR 90.  He had previously worked as a security bouncer at a nightclub, where he was paid "under the table."  AR 92-93.  During the day, Plaintiff was responsible for accepting liquor deliveries and moving stage and dance floor equipment according to the night's planned entertainment.  AR 94-95.

Plaintiff was using marijuana to relieve his pain even though his doctor had declined to give Plaintiff a medical marijuana card.  AR 96-97.  He was able to lift fifty pounds comfortably, much less than he had to lift on his last job.  AR 97.  In the mornings he walked his daughters one mile to school, then rested outside the office before walking home.  AR 98.  When he experienced pain while standing, as when he did the dishes, Plaintiff took a break.  AR 98.  He was most

---

[2] December 31, 2014, was the last date of Plaintiff's eligibility for disability insurance coverage.  AR 35.

comfortable sitting or lying on the floor. AR 99. When his pain was severe, Plaintiff smoked marijuana and lay down. AR 100.

### B. Medical Records

The administrative record includes limited medical records. At the administrative hearing Plaintiff's attorney confirmed that the record was complete and that Plaintiff had not seen his primary care physician "in quite some time." AR 89.

On December 28, 2013, Plaintiff was treated in the emergency department of Memorial Hospital Los Banos (MHLB) for an itchy rash diagnosed as ringworm. AR 365. Emergency room personnel also prescribed blood pressure medication because Plaintiff's blood pressure was high (199/110). AR 365-68. Plaintiff returned to MHLB on January 31, 2014, with a pruritic erythematous rash. AR 372-78.

On June 23, 2014, Plaintiff was treated in the emergency department following a fall in his bathtub. AR 381-83. Medical personnel diagnosed strain of the abductor muscles of the right leg and right paralumbar muscles and prescribed valium and Norco. AR 382-83. On June 25, 2014, Anna Vaz, NP, treated Plaintiff for muscle spasm at Santa Clara Valley Medical Center. AR 392. Ms. Vaz prescribed Flexeril. AR 392.

In the emergency department of Emanuel Medical Center on February 14, 2016, Brad Ramsey, D.O., treated Plaintiff for acute lumbar radiculopathy. AR 401. Dr. Ramsey prescribed Baclofen and Naproxen and directed Plaintiff to follow up with his primary care physician. AR 401.

On February 26, 2015, Plaintiff was treated for rectal bleeding in the gastroenterology department of Santa Clara Valley Medical Center. AR 403-08. In the course of a colonoscopy on June 3, 2015, Nimeesh Shah, M.D., removed three polyps from Plaintiff's colon. AR 409-10. In July 2015, doctors reported that the polyps were invasive carcinoma but that there was no evidence of metastases. AR 414.

In July 2016, Peter Park, M.D., diagnosed a ganglion cyst in Plaintiff's right wrist and prescribed Naproxen. AR 426.

///

## IV. Standard of Review

Pursuant to 42 U.S.C. §405(g), this court has the authority to review a decision by the Commissioner denying a claimant disability benefits. "This court may set aside the Commissioner's denial of disability insurance benefits when the ALJ's findings are based on legal error or are not supported by substantial evidence in the record as a whole." *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999) (citations omitted). Substantial evidence is evidence within the record that could lead a reasonable mind to accept a conclusion regarding disability status. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971). It is more than a scintilla, but less than a preponderance. *See Saelee v. Chater*, 94 F.3d 520, 522 (9th Cir. 1996) (internal citation omitted). When performing this analysis, the court must "consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence." *Robbins v. Social Security Admin.*, 466 F.3d 880, 882 (9th Cir. 2006) (citations and internal quotation marks omitted).

If the evidence reasonably could support two conclusions, the court "may not substitute its judgment for that of the Commissioner" and must affirm the decision. *Jamerson v. Chater*, 112 F.3d 1064, 1066 (9th Cir. 1997) (citation omitted). "[T]he court will not reverse an ALJ's decision for harmless error, which exists when it is clear from the record that the ALJ's error was inconsequential to the ultimate nondisability determination." *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008) (citations and internal quotation marks omitted).

## V. The Disability Standard

> To qualify for benefits under the Social Security Act, a plaintiff must establish that he or she is unable to engage in substantial gainful activity due to a medically determinable physical or mental impairment that has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. § 1382c(a)(3)(A). An individual shall be considered to have a disability only if . . . his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work, but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. §1382c(a)(3)(B).

To achieve uniformity in the decision-making process, the Commissioner has established a sequential five-step process for evaluating a claimant's alleged disability. 20 C.F.R. §§ 416.920(a)-(f). The ALJ proceeds through the steps and stops upon reaching a dispositive finding that the claimant is or is not disabled. 20 C.F.R. §§ 416.927, 416.929.

Specifically, the ALJ is required to determine: (1) whether a claimant engaged in substantial gainful activity during the period of alleged disability, (2) whether the claimant had medically determinable "severe impairments," (3) whether these impairments meet or are medically equivalent to one of the listed impairments set forth in 20 C.F.R. § 404, Subpart P, Appendix 1, (4) whether the claimant retained the residual functional capacity ("RFC") to perform his past relevant work, and (5) whether the claimant had the ability to perform other jobs existing in significant numbers at the national and regional level. 20 C.F.R. § 416.920(a)-(f).

In addition, when an applicant has one or more previous denials of applications for disability benefits, as Plaintiff does in this case, he or she must overcome a presumption of nondisability. The principles of *res judicata* apply to administrative decisions, although the doctrine is less rigidly applied to administrative proceedings than in court. *Chavez v. Bowen,* 844 F.2d 691, 693 (9th Cir. 1988); *Gregory v. Bowen,* 844 F.2d 664, 666 (9th Cir. 1988).

Social Security Acquiescence Ruling ("SSR") 97–4(9), adopting *Chavez,* applies to cases involving a subsequent disability claim with an unadjudicated period arising under the same title of the Social Security Act as a prior claim in which there has been a final administrative decision that the claimant is not disabled. A previous final determination of nondisability creates a presumption of continuing nondisability in the unadjudicated period. *Lester v. Chater,* 81 F.3d 821, 827 (9th Cir. 1995). The presumption may be overcome by a showing of changed circumstances, such as new and material changes to the claimant's RFC, age, education, or work experience. *Id.* at 827–28; *Chavez,* 844 F.2d at 693.

### VI. Summary of the ALJ's Decision

Acknowledging Plaintiff's previous applications for disability insurance benefits and supplemental security income, the ALJ found that the circumstances had changed since Plaintiff's prior application. AR 33. Accordingly, she concluded that the presumption of continuing

disability did not apply to the 2014 application, but that the October 11, 2012 decision was res judicata through that date. AR 33.

The Administrative Law Judge found that Plaintiff had not engaged in substantial gainful activity since the alleged onset date of October 1, 2009. AR 35. His severe impairments included: disorder of the spine with radiculopathy; disorder of the right knee; and obesity. AR 36. None of the severe impairments met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926). AR 36.

The ALJ concluded that Plaintiff had the residual functional capacity to perform light work as defined in 20 C.F.R. §§ 404.1567(b) and 416.967(b), except that he could lift, carry push and pull 25 pounds occasionally and 10 pounds frequently, and could stand and walk six hours in an eight-hour workday with the ability to rest at the end of each hour for about one minute. AR 36. He needed to rest for fifteen minutes every two hours falling within normal breaks and lunch period. AR 36. Plaintiff could sit without limitation. AR 36. Plaintiff was unable to climb ladders, ropes or scaffolds. AR 36. He could perform all other postural activities occasionally. AR 36.

Plaintiff was unable to perform his past relevant work. AR 39. However, considering Plaintiff's age, education, work experience and residual functional capacity jobs that he could perform existed in significant numbers in the national economy. AR 39. Accordingly, the ALJ found that Plaintiff was not disabled at any time from October 1, 2009, the alleged onset date, through December 8, 2016, the date of the decision. AR 40.

### VII. Reliability of Plaintiff's Testimony

Plaintiff contends that the ALJ failed to provide clear and convincing reasons for concluding that Plaintiff's allegations of his knee and back pain were not fully credible. The Commissioner contends that because of Plaintiff's lack of treatment and minimal objective findings, the ALJ properly determined that Plaintiff's subjective testimony was not supported by the objective medical evidence.

///

An ALJ is responsible for determining credibility, resolving conflicts in medical testimony and resolving ambiguities. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). His or her findings of fact must be supported by "clear and convincing evidence." *Burrell v. Colvin*, 775 F.3d 1133, 1136-37 (9th Cir. 2014).

To determine whether the ALJ's findings are supported by sufficient evidence a court must consider the record as a whole, weighing both the evidence that supports the ALJ's determination and the evidence against it. *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989). "[A] federal court's review of Social Security determinations is quite limited." *Brown-Hunter v. Colvin*, 806 F.3d 487, 492 (9th Cir. 2015). "For highly fact-intensive individualized determinations like a claimant's entitlement to disability benefits, Congress places a premium upon agency expertise, and, for the sake of uniformity, it is usually better to minimize the opportunity for reviewing courts to substitute their discretion for that of the agency." *Id.* (quoting *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1098 (9th Cir. 2014), quoting *Consolo v. Fed. Mar. Comm'n*, 383 U.S. 607, 621 (1966)) (internal quotation marks omitted). Federal courts should generally "'leave it to the ALJ to determine credibility, resolve conflicts in the testimony, and resolve ambiguities in the record.'" *Brown-Hunter*, 806 F.3d at 492 (quoting *Treichler*, 775 F.3d at 1098).

A claimant's statements of pain or other symptoms are not conclusive evidence of a physical or mental impairment or disability. 42 U.S.C. § 423(d)(5)(A); Soc. Sec. Rul. 16-3p. "An ALJ cannot be required to believe every allegation of [disability], or else disability benefits would be available for the asking, a result plainly contrary to the [Social Security Act]." *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989).

Social Security Ruling 16-3p applies to disability applications heard by the agency on or after March 28, 2016. Ruling 16-3p eliminated the use of the term "credibility" to emphasize that subjective symptom evaluation is not "an examination of an individual's character" but an endeavor to "determine how symptoms limit ability to perform work-related activities." S.S.R. 16-3p at 1-2.

///

An ALJ performs a two-step analysis to determine whether a claimant's testimony regarding subjective pain or symptoms is credible. *See Garrison v. Colvin*, 759 F.3d 995, 1014 (9th Cir. 2014); *Smolen v. Chater*, 80 F.3d 1273, 1281 (9th Cir. 1996); S.S.R 16-3p at 3. First, the claimant must produce objective medical evidence of an impairment that could reasonably be expected to produce some degree of the symptom or pain alleged. *Garrison*, 759 F.3d at 1014; *Smolen*, 80 F.3d at 1281-1282. In this case, the first step is satisfied by the ALJ's finding that Plaintiff's "medically determinable impairments could reasonably be expected to produce the alleged symptoms." AR 37. The ALJ did not find Plaintiff to be malingering.

If the claimant satisfies the first step and there is no evidence of malingering, the ALJ must "evaluate the intensity and persistence of [the claimant's] symptoms to determine the extent to which the symptoms limit an individual's ability to perform work-related activities." S.S.R. 16-3p at 2. "[S]ome individuals may experience symptoms differently and may be limited by symptoms to a greater or lesser extent than other individuals with the same medical impairments, the same objective medical evidence and the same non-medical evidence." S.S.R. 16-3p at 5. In reaching a conclusion, the ALJ must examine the record as a whole, including objective medical evidence; the claimant's representations of the intensity, persistence and limiting effects of his symptoms; statements and other information from medical providers and other third parties; and, any other relevant evidence included in the individual's administrative record. S.S.R. 16-3p at 5. "The determination or decision must contain specific reasons for the weight given to the individual's symptoms, be consistent with and supported by the evidence, and be clearly articulated so the individual and any subsequent reviewer can assess how the adjudicator evaluated the individual's symptoms." SSR 16-3p at *10.

Because a "claimant's subjective statements may tell of greater limitations than can medical evidence alone," an "ALJ may not reject the claimant's statements regarding her limitations merely because they are not supported by objective evidence." *Tonapetyan v. Halter*, 242 F.3d 1144, 1147-48 (2001) (quoting *Fair*, 885 F.2d at 602). *See also Bunnell v. Sullivan*, 947 F.2d 341, 345 (9th Cir. 1991) (holding that when there is evidence of an underlying medical impairment, the ALJ may not discredit the claimant's testimony regarding the severity of his

8

symptoms solely because they are unsupported by medical evidence). "Congress clearly meant that so long as the pain is *associated* with a clinically demonstrated impairment, credible pain testimony should contribute to a determination of disability." *Id.* (internal quotation marks and citations omitted).

However, the law does not require an ALJ simply to ignore inconsistencies between objective medical evidence and a claimant's testimony. "While subjective pain testimony cannot be rejected on the sole ground that it is not fully corroborated by objective medical evidence, the medical evidence is still a relevant factor in determining the severity of claimant's pain and its disabling effects." *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001); SSR 16-3p (citing 20 C.F.R. § 404.1529(c)(2)). As part of his or her analysis of the record as a whole, an ALJ properly considers whether the objective medical evidence supports or is consistent with a claimant's pain testimony. *Id.*; 20 C.F.R. §§ 404.1529(c)(4), 416.1529(c)(4) (symptoms are determined to diminish residual functional capacity only to the extent that the alleged functional limitations and restrictions "can reasonably be accepted as consistent with the objective medical evidence and other evidence"). The ALJ did so here, finding that Plaintiff's "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with medical evidence and other evidence in the record for the reasons explained in this decision." AR 37.

"[O]bjective medical evidence is a useful indicator to help make reasonable conclusions about the intensity and persistence of symptoms, including the effects those symptoms may have on the ability to perform work-related activities." S.S.R. 16-3p at 6. Because objective medical evidence may reveal the intensity, persistence and limiting effects of a claimant's symptoms, an ALJ must consider whether the symptoms reported by a claimant are consistent with medical signs and laboratory findings of record. *Id.*

To explain her assessment of Plaintiff's lack of reliability in this case, the ALJ stated, "The claimant has had very little treatment for his impairments and the objective findings are minimal." AR 37. The ALJ reviewed Plaintiff's treatment for back pain in June 2014 and

///

9

February 2015, Dr. Bayne's consultative examination and the opinions of the agency physicians. AR 37-38

In assessing a claimant's credibility, an ALJ may properly rely on "unexplained or inadequately explained failure to seek treatment or follow a prescribed course of treatment." *Molina v. Astrue*, 674 F.3d 1104, 1113 (9th Cir. 2012). A claimant's failure to assert a good reason for not seeking treatment or for failing to follow a prescribed course of treatment or an ALJ's finding that the proffered reason is not credible, cast doubt on the sincerity of the claimant's testimony. *Fair*, 885 F.2d at 603. "[I]f the frequency or extent of the treatment sought by an individual is not comparable with the degree of the individual's subjective complaints, or if the individual fails to follow prescribed treatment that may improve symptoms, we may find the alleged intensity and persistence of an individual's symptoms are inconsistent with the overall evidence of record." SSR 16-3p at 9.

Here, Plaintiff contends that because he lacks medical insurance, his subjective testimony should not be discounted based on his limited medical treatment. As summarized in the factual background statement above, however, Plaintiff sought treatment for acute, alarming or painful conditions including itchy or visually disturbing rashes, blood in his stool and a ganglion cyst in his right wrist. A claimant's ability to seek and obtain affordable medical care for other ailments supports a reasonable inference that the claimant could have obtained care for the allegedly disabling impairment if his symptoms were as severe as he alleged. *Karabajakyan v. Berryhill*, 713 Fed.Appx. 553, 555 (9th Cir. 2017).

In contrast to his other ailments, Plaintiff sought treatment of back pain on only two occasions, once following a fall in the bathtub. Such limited treatment fails to support his contention that he was unable to work because of constant debilitating pain. "That [a plaintiff's] pain was 'not severe enough to motivate [her] to seek [these forms] of treatment,' even if she sought some treatment, is powerful evidence of the extent to which she was in pain." *Burch v. Barnhart*, 400 F.3d 676, 681 (9th Cir. 2005) (quoting *Fair*, 885 F.2d at 604).

As is always the case in an appeal of the Commissioner's denial of disability benefits, Plaintiff would construe the evidence differently than the ALJ. Nonetheless, the hearing decision

10

sets forth sufficient evidence in the record to support the ALJ's determination that Plaintiff's representations to the agency were not fully consistent with the medical evidence of record. The Court therefore cannot second guess the ALJ's assessment of Plaintiff's credibility.

### VIII. Sufficient Evidence Supported the ALJ's Determination

Plaintiff contends that the determination of Plaintiff's residual functional capacity was not supported by sufficient evidence. The Commissioner disagrees. After carefully reviewing the administrative record and the ALJ's analysis, the Court concludes that substantial evidence supported the ALJ's determination of Plaintiff's residual functional capacity.

#### A. Medical Opinions

##### 1. Agency Physicians

In the initial evaluation, agency physician K. Quint, M.D. opined that Plaintiff could lift twenty pounds occasionally and ten pounds frequently; stand or walk six hours in an eight-hour work day; and, sit about six hours in an eight-hour workday. AR 132, 144. Plaintiff could occasionally balance, stoop, kneel, crouch and crawl, but could never climb ladders, ropes or scaffolds. AR 132, 144. He should avoid concentrated exposure to hazards such as machinery and heights. AR 133, 145.

Following the initial evaluation, Plaintiff slipped in the bathtub, injuring right abductor and right paralumbar muscles. AR 157, 171. Thereafter, Plaintiff experienced traumatic muscle spasms. AR 157. Evaluating Plaintiff's medical claim on reconsideration, agency physician C. De la Rosa, M.D., noted that because Plaintiff's recent injury was likely to resolve within twelve months, it did not impact Plaintiff's residual functional capacity. AR 157. Dr. De la Rosa agreed with Dr. Quint's assessment of Plaintiff's residual functional capacity except for the applicable environmental restrictions. AR 160-61, 173-75. Dr. De la Rosa opined that Plaintiff should avoid concentrated exposure to extreme cold and heat and vibration but exposure to hazards was unlimited. AR 160-61.

On reconsideration, agency psychiatrist Mark Dilger, M.D., performed the psychiatric review technique and opined that Plaintiff had no psychological disability. AR 158, 172.

///

### B. Orthopedic Consultative Examination

On June 18, 2014, orthopedist Omar Bayne, M.D., prepared an evaluation of Plaintiff's knee pain and recurrent back pain. AR 359-61. Plaintiff reported a history of lumbar degenerative disc disease with possible spondylolisthesis that resulted in radicular pain and numbness of the lower left extremity. AR 359. He had received conservative treatment including pain and anti-inflammatory medications and chiropractic manipulation. AR 359. Plaintiff could partially alleviate his pain by avoiding aggravating factors such as bending, twisting, crouching crawling and stooping. AR 359. Plaintiff could lift no more than ten pounds, walk about one-half block and sit for ten to fifteen minutes. AR 359.

As a young man Plaintiff broke his right knee cap while playing football. AR 359. He now experienced knee pain when squatting, kneeling, crouching and stooping and was unable to run or play sports. AR 359.

Plaintiff had difficulty lying on his back and experienced significant sleep disturbance. AR 359. His medications included lisinopril; over-the-counter pain relievers such as ibuprofen (Advil) and Aleve; and, medical marijuana. AR 359. Because Plaintiff had no medical insurance, he did not take prescription pain medications and had significant muscle spasms upon palpation. AR 359.

Examination revealed a slow, bent-over gait and difficulty walking on heels and toes. AR 359. Plaintiff was only able to squat about fifty per cent of normal due to knee and back pain. AR 359. The cervical spine examination was generally normal. AR 360. Plaintiff's lumbosacral spine lacked a normal lordotic curve and was tender to palpation. AR 360. Straight leg raising was sixty degrees on the left with radiculopathy, and seventy degrees on the right with low back pain and spasms. AR 360. Strength and range of motion in the lower extremities was normal, however, the right knee was tender to palpation. AR 360. Plaintiff had reduced sensation to light touch on the left calf and thigh over the L5 dermatome distribution. AR 360.

Dr. Bayne diagnosed chronic recurrent low back strain/sprain; lumbar degenerative disc disease with L5 radiculopathy; history of right patellar fracture; right patellofemoral arthritis; history of hypertension; and, history of insomnia. AR 360. The doctor opined:

> [Plaintiff] should be able to stand and walk with appropriate breaks for four hours in an eight-hour workday. He should be able to sit with appropriate breaks for six hours in an eight-hour workday. Repetitive bending, twisting, crouching, crawling, stooping, kneeling, climbing up and down stairs, inclines, ramps or ladders should be limited to occasionally. He should be able to lift and carry 20 pounds frequently and 40 pounds occasionally. He should be able to work in any work environment except on unprotected heights.

AR 360.

## B. Determining Residual Functional Capacity

"Residual functional capacity is an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis." SSR 96-8p. The residual functional capacity assessment considers only functional limitations and restrictions which result from an individual's medically determinable impairment or combination of impairments. SSR 96-8p.

A determination of residual functional capacity is not a medical opinion, but a legal decision that is expressly reserved for the Commissioner. See 20 C.F.R. §§ 404.1527(d)(2) (RFC is not a medical opinion), 404.1546(c) (identifying the ALJ as responsible for determining RFC). "[I]t is the responsibility of the ALJ, not the claimant's physician, to determine residual functional capacity." *Vertigan v. Halter*, 260 F.3d 1044, 1049 (9th Cir. 2001). In doing so the ALJ must determine credibility, resolve conflicts in medical testimony and resolve evidentiary ambiguities. *Andrews*, 53 F.3d at 1039-40.

"In determining a claimant's RFC, an ALJ must consider all relevant evidence in the record such as medical records, lay evidence and the effects of symptoms, including pain, that are reasonably attributed to a medically determinable impairment." *Robbins*, 466 F.3d at 883. *See also* 20 C.F.R. § 404.1545(a)(3) (residual functional capacity determined based on all relevant medical and other evidence). "The ALJ can meet this burden by setting out a detailed and thorough summary of the facts and conflicting evidence, stating his interpretation thereof, and making findings." *Magallanes*, 881 F.2d at 751 (quoting *Cotton v. Bowen*, 799 F.2d 1403, 1408 (9th Cir. 1986)).

///

The opinions of treating physicians, examining physicians, and non-examining physicians are entitled to varying weight in residual functional capacity determinations. *Lester*, 81 F.3d at 830. Ordinarily, more weight is given to the opinion of a treating professional, who has a greater opportunity to know and observe the patient as an individual. *Id.*; *Smolen v. Chater*, 80 F.3d 1273, 1285 (9th Cir. 1996). The opinion of an examining physician is, in turn, entitled to greater weight than the opinion of a non-examining physician. *Pitzer v. Sullivan*, 908 F.2d 502, 506 (9th Cir. 1990). An ALJ may reject an uncontradicted opinion of a treating or examining medical professional only for "clear and convincing" reasons. *Lester*, 81 F.3d at 831. In contrast, a contradicted opinion of a treating professional may be rejected for "specific and legitimate" reasons. *Id.* at 830. However, the opinions of a treating or examining physician are "not necessarily conclusive as to either the physical condition or the ultimate issue of disability." *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 600 (9th Cir. 1999).

### C. The ALJ Properly Analyzed Evidence in the Record as a Whole

"[A]n ALJ is responsible for determining credibility and resolving conflicts in medical testimony." *Magallanes*, 881 F.2d at 750. An ALJ may choose to give more weight to opinions that are more consistent with the evidence in the record. 20 C.F.R. §§ 404.1527(c)(4) ("the more consistent an opinion is with the record as a whole, the more weight we will give to that opinion").

The ALJ gave little weight to Dr. Bayne's opinion that Plaintiff could stand and walk for only four hours in an eight-hour work day, but adopted the doctor's restrictions on Plaintiff's climbing ladders, ropes, scaffolds and limits on other postural activities. AR 38. She noted that Plaintiff testified that he was able to lift fifty pounds and that Dr. Bayne opined that Plaintiff could lift and carry 20 pounds frequently and 40 pounds occasionally. AR 38. Despite Plaintiff's admission of greater weight-bearing ability, the ALJ gave some weight to Dr. Bayne's opinion, but reduced the amount of weight in Plaintiff's residual functional capacity to assist in Plaintiff's ability to stand and walk for longer periods without rest. AR 38. The ALJ also gave some weight to the opinions of Drs. Quint and De la Rosa but found that the record as a whole did not support the conflicting environmental restrictions imposed by the agency physicians. AR 38

1      "[A]n ALJ is responsible for determining credibility and resolving conflicts in medical testimony." *Magallanes*, 881 F.2d at 750. He properly determines the weight to be given each medical opinion by considering the evidence in the record as the ALJ did here. 20 C.F.R. § 404.1527(c)(4) ("the more consistent an opinion is with the record as a whole, the more weight we will give to that opinion"). The record must include objective evidence to support the medical opinion of the claimant's residual functional capacity. *Meanel v. Apfel*, 172 F.3d 1111, 1113-14 (9th Cir. 1999). Inconsistencies with the overall record or with a physician's own notes are a valid basis to reject a medical opinion. *Molina v. Astrue*, 674 F.3d 1104, 1111-1112 (9th Cir. 2012) (recognizing that a conflict with treatment notes is a germane reason to reject a treating physician's assistant's opinion); *Connett v. Barnhart,* 340 F.3d 871, 875 (9th Cir. 2003) (rejecting physician's opinion when treatment notes provide no basis for the opined functional restrictions); *Tommasetti*, 533 F.3d at 1041 (incongruity between questionnaire responses and the Plaintiff's medical records is a specific and legitimate reason for rejecting an opinion); *Valentine v. Comm'r of Soc. Sec. Admin.*, 574 F.3d 685, 692-693 (9th Cir. 2009) (holding that a conflict with treatment notes is a specific and legitimate reason to reject a treating physician's opinion).

    Plaintiff contends that in evaluating Dr. Bayne's opinion, the ALJ impermissibly conflated Plaintiff's residual ability to stand and walk with his ability to bear weight. Although focusing solely on the ALJ's evaluation of Dr. Bayne's opinion could lead to such a conclusion, the record as a whole establishes the contrary. The ALJ also gave some weight to the opinions of the agency physicians who opined that Plaintiff could walk for longer periods but lift less weight, rejecting only the conflicting environmental restrictions to which the agency physicians opined. The agency physicians' opinions supported the ALJ's conclusions concerning Plaintiff's residual functional capacity to lift weight and to stand and walk in an eight-hour work day. Thus, the ALJ's determination was appropriately supported by the record as a whole.

### X.    Conclusion and Order

    Based on the foregoing, the Court finds that the ALJ's decision that Plaintiff is not disabled is supported by substantial evidence in the record as a whole and is based on proper legal standards. Accordingly, this Court DENIES Plaintiff's appeal from the administrative decision of

the Commissioner of Social Security. The Clerk of Court is directed to enter judgment in favor of Defendant Andrew Saul, Commissioner of Social Security, and against Plaintiff David Tuupoina.

IT IS SO ORDERED.

Dated:  **January 6, 2020**                              **/s/ Gary S. Austin**
                                                                  UNITED STATES MAGISTRATE JUDGE